HONORABLE RONALD B. LEIGHTON

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

ILDEBRANDO ROSSICH,

        Plaintiff,

v.

BNSF RAILWAY COMPANY, a Delaware corporation,

        Defendant.

CASE NO. C18-5829RBL

ORDER DENYING SUMMARY JUDGMENT

THIS MATTER is before the Court on Defendant's Motion for Summary Judgment [Dkt. # 38]. The Court has reviewed the materials filed for and against the motion. Oral argument is unnecessary. For the reasons stated below, the motion is **DENIED**.

**I. FACTS**

On June 9, 2017, Plaintiff Rossich was working on Job 156 as a Switchman Helper at the BNSF Tacoma East End Yard in Tacoma, Washington, along with Switchman Chase DeGarmo and Engineer Philip Ray. Rossich and the crew were tasked with moving railcars from the east end of the yard to various pre-designated tracks which branched off the lead section of track.

Rossich and his crew worked from a list of cars and "cut"[1] the specified cars from the main group and "kick"[2] the cars off the lead track, which moved the cars onto separate tracks using a series of switches on the tracks. Once the cars were separated and moved to the designated tracks, the crew would secure the railcars by tying the handbrakes on the railcars. This switching process was followed because they believed it was more a more efficient to way to switch a large volume of railcars in a short period of time, and it was safe.

As the crew was in the process of switching railcars, single railcar ATW 84177, on Track 17, was part of their switching task. Rossich was engaged in the process of securing railcars his crew had moved onto nearby tracks in the east end of the Tacoma yard.

Two Federal Railroad Administration (FRA) inspectors observed the crew as they worked. The Job 156 crew asked East Yard headquarters, "who is sitting in the van watching us?" The response was a warning: "FRA is in the yard, make sure you check your securement." Based on their observations of the work, the FRA inspectors issued a Verbal Individual Liability (VIL) for failing to secure unattended equipment by applying a hand brake to prevent dangerous movement of the equipment. The FRA also cited BNSF.

Three days later, BNSF initiated its own investigation, because failing to properly secure unattended equipment also violates BNSF safety rules. Rossich had a previous disciplinary action in his record. The prior February, Rossich had received a "Level S" Violation (Serious) for causing a derailment (and damage) when he failed to properly protect a shoving movement and stop short of a derail. A Level S discipline has a one-year review period (through February

---

[1] "Cutting" is a term used in the railroad industry to describe the process of separating one or more railcars from a larger group of connected railcars.

[2] "Kicking" is a term used in the railroad industry to describe the process of using a locomotive to push a railcar and cause it to move a short distance under its own inertia.

10, 2018), meaning that any violation during the review period could result in further disciplinary action.

The Collective Bargaining Agreement (CBA) between BNSF and Rossich's union (SMART-TD) required BNSF to notify Rossich, and hold an investigation hearing, prior to disciplining him. On July 14, 2017, before that investigation began (and, therefore, before BNSF considered evidence or evaluated potential discipline), Rossich slipped and fell on improperly stored and spilled pebbles of ice melt on a walkway on the job and was injured. BNSF arranged for an ambulance to transport Rossich to the hospital and was therefore immediately aware of the incident. Rossich also submitted to BNSF an injury report three days later.

BNSF held a hearing about the June incident just weeks later, on August 8, 2017. Every eyewitness testified that the crew (including Rossich) had acted in accordance with their training and BNSF's operational practices in securing the cars as they did. They testified that Rossich was in the process of securing cars, and would have soon arrived at Track 17 to secure the car in question. No witnesses testified that Rossich had acted inappropriately or violated BNSF rules or established practices. After the investigation hearing, BNSF managers independently reviewed the investigation transcript and exhibits to determine whether Rossich had violated BNSF rules. They found that he had, and on August 22, 2017, BNSF dismissed Rossich. This dismissal was in accordance with BNSF's stated progressive discipline policy, its Policy for Employee Performance Accountability (PEPA).

## II. SUMMARY JUDGMENT STANDARD

Summary judgment is proper "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the

movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). In determining whether an issue of fact exists, the Court must view all evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor. *Anderson Liberty Lobby, Inc.*, 477 U.S. 242, 248-50 (1986); *Bagdadi v. Nazar*, 84 F.3d 1194, 1197 (9th Cir. 1996). A genuine issue of material fact exists where there is sufficient evidence for a reasonable factfinder to find for the nonmoving party. *Anderson*, 477 U.S. at 248. The inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id*. At 251-52. The moving party bears the initial burden of showing that there is no evidence which supports an element essential to the nonmovant's claim. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Once the movant has met this burden, the nonmoving party then must show that there is a genuine issue for trial. *Anderson*, 477 U.S. at 250. If the nonmoving party fails to establish the existence of a genuine issue of material fact, "the moving party is entitled to judgment as a matter of law." *Celotex*, 477 U.S. at 323-24.

### III. DISCUSSION

Rossich claims that BNSF Section 20109 of the Federal Railroad Safety Act (FRSA) by dismissing him in retaliation for reporting a work-related injury. 49 U.S.C. § 20109(a)(4). BNSF moves for summary dismissal of that claim.

The FRSA requires a plaintiff to prove by a preponderance of the evidence that: (1) he engaged in a protected activity; (2) the actual decisionmaker(s) had knowledge of the protected action; (3) he suffered an unfavorable personnel action; and (4) the protected activity was a contributing factor in the unfavorable action. *Rookaird v. BNSF*, 908 F.3d 451, 455 (9th Cir. 2018). Regardless of whether a plaintiff can meet those four elements, there is no liability if the

employer demonstrates that it "would have taken the same unfavorable personnel action in the absence of [the protected activity]." 49 U.S.C. § 42121(b)(2)(B)(ii).

To establish a claim of unlawful discrimination under the FRSA, a plaintiff must prove by a preponderance of the evidence that his protected conduct was a contributing factor in the unfavorable personnel action alleged in the complaint (citing 49 U.S.C. § 42121(b)(2)(B)(iii)). A contributing factor is "any factor, which alone or in connection with other factors, tends to affect in any way the outcome of the decision." *Rookaird*, 908 F.3d at 461 (internal quotation marks omitted). If the plaintiff succeeds, the employer can attempt to rebut the allegations and defeat the claim by demonstrating "by clear and convincing evidence that the employer would have taken the same unfavorable personnel action in the absence of [the protected activity]." 49 U.S.C. § 42121(b)(2)(B)(iv).

Importantly, the only burden the statute places on FRSA plaintiffs is to ultimately prove that their protected conduct was a contributing factor to the adverse employment action—i.e., that it "tend[ed] to affect" the decision in some way. *Id*. § 42121(b)(2)(B); *Rookaird*, 908 F.3d at 461.

BNSF argues that Rossich's claimed protected activity of reporting an injury in 2017 fails because (1) he did not assert it as a protected activity in his OSHA Complaint; and (2) admitted it was not a contributing factor in his dismissal.

Rossich argues that the administrative process is not formal and as a result strict formalistic treatment of the allegations in his complaint are not appropriate. "We must keep in mind that complainants filing discrimination charges are acting as laypersons and should not be held to the higher standard of legal pleading by which we would review a civil complaint." *B.K.B. v. Maui Police Depts.*, 276 F.3d 1091, 1103 (9th Cir. 2002). BNSF acknowledges that

Rossich's injury *was* mentioned in his OSHA Complaint and that OSHA actually investigated Rossich's injury in connection with his termination. Rossich also claims he misunderstood the impact of the OSHA investigator's question at the time.

The Court cannot adjudicate credibility issues on summary judgment; credibility determinations are squarely within the jury's province.

BNSF also argues Rossich cannot demonstrate that his protected activity (reporting the injury) was contributed to the adverse action (termination). Rossich argues that the temporal proximity between the FRA violation, his injury, the hearing, and his termination negates (for summary judgment purposes) that any other event contributed to the termination decision. The Court is skeptical, but the jury is the decisionmaker on this point, as well.

Finally, BNSF argues that it has established by clear and convincing evidence that it would have terminated Rossich with or without the intervening injury. OSHA found for BNSF and the FRA found that Rossich violated the securement regulations. Only BNSF decided to terminate Rossich. As BNSF admits, the FRA could not and did not recommend whether or not any crew members should have been disciplined under BNSF's own securement rules. FRA's report includes its opinion that the rail car was "unmanned *in such a manner* that a qualified employee could not *readily access* the hand brake." This is not a valid opinion about whether a regulation was violated. Its about circumstances on site, not a factual determination of where employees were, their distance from the rail car, or their other activities at the time.

As in a recent Montana case, "BNSF puts much stock in its internal procedures and safeguards designed to prevent discrimination while failing to recognize that these checks are only as effective as the people enforcing them. . . . [T]he people, not the process, treated him

unfairly by retaliating against him after he filed his injury report." *Wooten v. BNSF Ry. Co.*, 387 F.Supp.3d 1078, 1094 (D. Montana 2019).

Questions of fact remain. BNSF's Motion for Summary Judgment [Dkt. #38] is **DENIED**.

IT IS SO ORDERED.

Dated this 9th day of January, 2020.

Ronald B. Leighton
United States District Judge